Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN VARGOSKO, Individually and on behalf of all others similarly situated, | Case No. 17-cv-6207 |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| v. | **JURY TRIAL DEMANDED** |
| ZILLOW GROUP, INC., SPENCER M. RASCOFF, and KATHLEEN PHILIPS, | |
| Defendants. | |

Plaintiff Stephen Vargosko ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings,

- 1 -

wire and press releases published by and regarding Zillow Group, Inc. ("Zillow" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Zillow from February 12, 2016 through August 8, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.     Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the Company conducts business in this judicial district.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

Class Action Complaint for Violation of the Federal Securities Laws

**PARTIES**

6.     Plaintiff, as set forth in the accompanying Certification, purchased Zillow securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.     Defendant Zillow operates real estate and home-related information marketplaces on mobile and the Web in the United States. The Company is incorporated in Washington and headquartered at 1301 Second Avenue, Floor 31, Seattle, Washington. The Company maintains an office in Irvine, California. The Company's securities are traded on The Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "Z."

8.     Defendant Spencer M. Rascoff ("Rascoff") has been the Company's Chief Executive Officer ("CEO") throughout the Class Period.

9.     Defendant Kathleen Philips ("Philips") has been the Company's Chief Financial Officer ("CFO") throughout the Class Period.

10.     Defendants Rascoff and Philips are sometimes referred to herein as the "Individual Defendants."

11.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

- 3 -

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

12.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

15.     The Company's co-marketing program allows mortgage lenders to pay for portions of realty agents' monthly advertising costs on Zillow websites.

### Materially False and Misleading Statements

16.     On February 12, 2016, the Company filed a Form 10-K for the fiscal year ended December 31, 2015 ("2015 10-K") with the SEC, which provided the Company's annual financial results and position. The 2015 10-K was signed by Defendants Rascoff and Philips. The 2015 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Rascoff and Philips attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

- 4 -

17.     The 2015 10-K stated the following regarding the Company's adherence to government regulations:

**Government Regulation**

We are affected by laws and regulations that apply to businesses in general, as well as to businesses operating on the Internet and through mobile applications. This includes a continually expanding and evolving range of laws, regulations and standards that address information security, data protection, privacy, consent and advertising, among other things. We are also subject to laws governing marketing and advertising activities conducted by telephone, email, mobile devices, and the Internet, including the Telephone Consumer Protect Act, the Telemarketing Sales Rule, the CAN-SPAM Act, and similar state laws. In addition, some of our mortgage advertising products are operated by our wholly owned subsidiary, Zillow Group Mortgages, Inc., a licensed mortgage broker, pursuant to a support services agreement. Though we do not take mortage applications or make loans or credit decisions in connection with loans, Zillow Group Mortgages, Inc. is subject to stringent state and federal laws and regulations and to the scrutiny of state and federal government agencies as a licensed mortgage broker.

By providing a medium through which users can post content and communicate with one another, we may also be subject to laws governing intellectual property ownership, obscenity, libel, and privacy, among other issues. In addition, the real estate agents, mortgage professionals, banks, property managers, rental agents and some of our other customers and advertisers on our mobile applications and websites are subject to various state and federal laws and regulations relating to real estate, rentals and mortgages. ***We endeavor to ensure that any content created by Zillow is consistent with such laws and regulations by obtaining assurances of compliance from our advertisers and consumers for their activities through, and the content they provide on, our mobile applications and websites.*** The real estate, mortgages, and rentals industries are subject to significant state and federal regulation; though we provide advertising services and technology solutions to real estate, mortgages, and rentals professionals, certain of our activities may be deemed to be covered by these industry regulations. Since the laws and regulations governing real estate, rentals and mortgages are constantly evolving, it is possible that we may have to materially alter

- 5 -

the way we conduct some parts of our business activities or be prohibited from conducting such activities altogether at some point in the future.

(Emphasis added).

18.    On February 2, 2017, the Company filed a Form 10-K for the fiscal year ended December 31, 2016 ("2016 10-K") with the SEC, which provided the Company's annual financial results and position. The 2016 10-K was signed by Defendants Rascoff and Philips. The 2016 10-K also contained signed SOX certifications by Defendants Rascoff and Philips attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

19.    The 2016 10-K stated the following regarding the Company's adherence to government regulations:

**Government Regulation**
We are affected by laws and regulations that apply to businesses in general, as well as to businesses operating on the internet and through mobile applications. This includes a continually expanding and evolving range of laws, regulations and standards that address information security, data protection, privacy, consent and advertising, among other things. We are also subject to laws governing marketing and advertising activities conducted by telephone, email, mobile devices, and the internet, including the Telephone Consumer Protect Act, the Telemarketing Sales Rule, the CAN-SPAM Act, and similar state laws. In addition, some of our mortgage advertising products are operated by our wholly owned subsidiary, Zillow Group Mortgages, Inc., a licensed mortgage broker, pursuant to a support services agreement. Though we do not take mortgage applications or make loans or credit decisions in connection with loans, Zillow Group Mortgages, Inc. is subject to stringent state and federal laws and regulations and to the scrutiny of state and federal government agencies as a licensed mortgage broker.

By providing a medium through which users can post content and communicate with one another, we may also be subject to laws

Class Action Complaint for Violation of the Federal Securities Laws

governing intellectual property ownership, obscenity, libel, and privacy, among other issues. In addition, the real estate agents, mortgage professionals, banks, property managers, rental agents and some of our other customers and advertisers on our mobile applications and websites are subject to various state and federal laws and regulations relating to real estate, rentals and mortgages. ***We endeavor to ensure that any content created by Zillow Group is consistent with such laws and regulations by obtaining assurances of compliance from our advertisers*** and consumers for their activities through, and the content they provide on, our mobile applications and websites. The real estate, mortgages, and rentals industries are subject to significant state and federal regulation; though we provide advertising services and technology solutions to real estate, mortgages, and rentals professionals, certain of our activities may be deemed to be covered by these industry regulations. Since the laws and regulations governing real estate, rentals and mortgages are constantly evolving, it is possible that we may have to materially alter the way we conduct some parts of our business activities or be prohibited from conducting such activities altogether at some point in the future.

(Emphasis added).

20.    On May 4, 2017, the Company filed a Form 10-Q for the quarterly period ended March 31, 2017 ("2017 Q1 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 2017 Q1 10-Q was signed by Defendant and Philips. The 2017 Q1 10-Q also contained signed SOX certifications by Defendants Rascoff and Philips attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

21.    The statements referenced in ¶¶ 16 - 20 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:

Class Action Complaint for Violation of the Federal Securities Laws

(1) the Company's co-marketing program did not comply with the Real Estate Settlement Procedures Act; and (2) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

22.    On August 8, 2017, the Company filed a Form 10-Q for the quarterly period ended June 30, 2017, stating in relevant part:

> In April 2017, we received a Civil Investigative Demand from the Consumer Financial Protection Bureau ("CFPB") requesting information related to our March 2017 response to the CFPB's February 2017 Notice and Opportunity to Respond and Advise ("NORA") letter. The NORA letter notified us that the CFPB's Office of Enforcement was considering whether to recommend that the CFPB take legal action against us, alleging that we violated Section 8 of the Real Estate Settlement Procedures Act ("RESPA") and Section 1036 of the Consumer Financial Protection Act ("CFPA"). This notice stemmed from an inquiry that commenced in 2015 when we received and responded to an initial Civil Investigative Demand from the CFPB. We continue to cooperate with the CFPB in connection with requests for information. Based on correspondence from the CFPB in August 2017, we understand that it has concluded its investigation. The CFPB has invited us to discuss a possible settlement and indicated that it intends to pursue further action if those discussions do not result in a settlement. We continue to believe that our acts and practices are lawful and that our co-marketing program allows lenders and agents to comply with RESPA, and we will vigorously defend against any allegations to the contrary. Should the CFPB commence an action against us, it may seek restitution, disgorgement, civil monetary penalties, injunctive relief or other corrective action. We cannot provide assurance that the CFPB will not commence a legal action against us in this matter, nor are we able to predict the likely outcome of any such action. We have not recorded an accrual related to this matter as of June 30, 2017 or December 31, 2016. There is a reasonable possibility that a loss may be incurred; however, the possible loss or range of loss is not estimable.

Class Action Complaint for Violation of the Federal Securities Laws

23.    On this news, shares of the Company fell $7.43 per share or over 15% over the next two trading days to close at $40.50 per share on August 10, 2017, damaging investors.

24.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publically traded securities of Zillow during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

Class Action Complaint for Violation of the Federal Securities Laws

28.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants' acts as alleged violated the federal securities laws;

(b)     whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c)     whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e)     whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f)     whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it

Class Action Complaint for Violation of the Federal Securities Laws

1 | impossible for members of the Class to individually redress the wrongs done to them.
2 | There will be no difficulty in the management of this action as a class action.

3 |      31.    Plaintiff will rely, in part, upon the presumption of reliance established
4 | by the fraud-on-the-market doctrine in that:

5 |     (a)    Defendants made public misrepresentations or failed to disclose material
6 | facts during the Class Period;

7 |     (b)    the omissions and misrepresentations were material;

8 |     (c)    the Company's securities are traded in efficient markets;

9 |     (d)    the Company's securities were liquid and traded with moderate to heavy
10 | volume during the Class Period;

11 |     (e)    the Company traded on the NASDAQ, and was covered by multiple
12 | analysts;

13 |     (f)    the misrepresentations and omissions alleged would tend to induce a
14 | reasonable investor to misjudge the value of the Company's securities;
15 | Plaintiff and members of the Class purchased and/or sold the Company's
16 | securities between the time the Defendants failed to disclose or
17 | misrepresented material facts and the time the true facts were disclosed,
18 | without knowledge of the omitted or misrepresented facts; and

19 |     (g)    Unexpected material news about the Company was rapidly reflected in
20 | and incorporated into the Company's stock price during the Class
21 | Period.

22 |      32.    Based upon the foregoing, Plaintiff and the members of the Class are
23 | entitled to a presumption of reliance upon the integrity of the market.

24 |      33.    Alternatively, Plaintiff and the members of the Class are entitled to the
25 | presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of*
26 | *the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants
27 | omitted material information in their Class Period statements in violation of a duty to
28 | disclose such information, as detailed above.

Class Action Complaint for Violation of the Federal Securities Laws

**COUNT I**

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5**
**Against All Defendants**

34.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35.    This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

36.    During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37.    The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

38.    The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true

- 12 -

facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

39.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

40.    As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

41.    Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

42.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

43.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder

Class Action Complaint for Violation of the Federal Securities Laws

and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

44.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

46.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

47.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

Class Action Complaint for Violation of the Federal Securities Laws

48.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

49.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 22, 2017                    Respectfully submitted,

                                         **THE ROSEN LAW FIRM, P.A.**

Class Action Complaint for Violation of the Federal Securities Laws

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws